IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Ronnie Colclough, #2672, ) | |
| ) | Civil Action No. 6:07-3548-HMH-WMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Anthony Dennis, Sheriff and ) | |
| B. Barfield, Sheriff's Deputy, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 35) and the plaintiff's motion for summary judgment (doc. 50). The plaintiff, who is proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

The plaintiff raises claims related to his arrest on May 23, 2007. He claims he was improperly arrested by defendant Investigator Barfield. He also claims defendant Sheriff Dennis promised he would not be arrested if he cooperated with the investigation, and the Sheriff "breached his promise" by allowing him to be arrested. The plaintiff claims that the actions of these defendants violated his Fourth, Fifth, and Fourteenth Amendment rights.

On May 15, 2008, the defendants filed a motion for summary judgment. By order filed on May 16, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On November 24, 2008, the plaintiff filed his own motion for summary judgment, which will also be considered as his

opposition to the defendants' motion. The defendants filed a response to the plaintiff's motion on December 12, 2008.

## **FACTS PRESENTED**

In May 2007, defendant Investigator Benny Barfield of the Sumter County Sheriff's Office became involved in an investigation of a number of break-ins at a Sumter business called Evans Trailers (Benny Barfield aff. ¶ 3). During his investigation, Barfield gathered evidence and spoke with witnesses. Ultimately, Barfield obtained a security video showing a person identified as the plaintiff breaking into the business and a receipt from a recycling center where the plaintiff had attempted to sell some of the stolen materials (*id.* ¶ 5-6). Based on this information, Barfield was planning to seek an arrest warrant for the plaintiff on May 23, 2007 (*id.* ¶ 7). The decision was made that the plaintiff was the primary suspect, and defendant Barfield advised his supervisor, Captain James Turner, who then advised defendant Sheriff Anthony Dennis that a warrant would be sought for the plaintiff (Anthony Dennis aff. ¶ 5; James Turner aff. ¶ 5).

Before the warrant could be obtained, there was another break-in at Evans Trailers on the night of May 22, 2007. The following morning, the Sheriff was called by the property owner because there had been another break-in (Dennis aff. ¶ 6). The Sheriff then went to meet the owner of the property and asked Captain Turner to go with him (*id.*). Defendant Barfield also met them at the property (Barfield aff. ¶ 8). Defendant Barfield advised the Sheriff that he was planning to obtain a warrant that day for the arrest of the plaintiff for the prior break-ins (*id.* ¶ 9). The defendants then found a path leading from the point of the break-in, where it appeared someone was dragging the materials that had been stolen (Barfield aff. ¶ 10; Dennis aff. ¶ 7; Turner aff. ¶ 6). As a result, they called the K-9 handler, who brought out his dog to follow the trail (Barfield aff. ¶ 10; Dennis aff. ¶ 8; Turner aff. ¶ 7). The trail led to 42B Lincoln Avenue, which is the residence of the plaintiff, and they

found some of the stolen wire burning in the backyard (Barfield aff. ¶ 11; Dennis aff. ¶¶ 8-9; Turner aff. ¶¶ 7-8).

The Sheriff saw the plaintiff down the street and asked him to come back to his house to speak with the officers (Barfield aff. ¶ 12; Dennis aff. ¶ 10). The Sheriff advised the plaintiff that there was obviously evidence to arrest him and the officers wanted his assistance to recover all of the stolen materials (Barfield aff. ¶ 12; Dennis aff. ¶¶ 11-12). The defendants contend that, contrary to the plaintiff's assertions, no one told the plaintiff that he would not be arrested, as it had already been decided to seek an arrest warrant for him for the previous crimes (Barfield aff. ¶ 13; Dennis aff. ¶ 13; Turner aff. ¶ 10). The Sheriff testified that he did ask the plaintiff to tell them where the stolen items were, since there were a number of tools and equipment that were not at his residence (Dennis aff. ¶ 12). The Sheriff also told the plaintiff that he needed to cooperate, as he was embarrassing his family name, since his son was an employee of the Sheriff (*id.*). Once the plaintiff agreed to cooperate, Sheriff Dennis left and was not involved in the search, arrest, or any further investigation (*id.* ¶ 13).

Once the plaintiff agreed to cooperate, defendant Barfield gave him his *Miranda* warning, and the plaintiff agreed to waive his right to counsel (Barfield aff. ¶ 14). The plaintiff also gave a consent to search his residence (Barfield aff. ¶ 15; Turner aff. ¶ 9). The plaintiff admitted to being involved in several break-ins at Evans Trailers and asked defendant Barfield to write a statement for him (Barfield aff. ¶ 15; Turner aff. ¶ 11). The plaintiff was then arrested and taken to the detention center.

Defendant Barfield prepared arrest warrants that were signed by a magistrate and served on the plaintiff (Barfield aff. ¶ 17). A witness spoke with Barfield and told him that the plaintiff had sold him stolen materials, and another witness told Barfield that he had transported the plaintiff to a recycling center where he had tried to sell additional stolen materials (*id.* ¶¶ 18-19). Defendant Barfield continued his investigation, obtained a second

statement from the plaintiff, and obtained another warrant, which was served on the plaintiff on May 29, 2007, after it was issued that same day (*id.* ¶ 21).  The warrants charged the plaintiff with First Degree Burglary and Trespassing (*id.*, ex. A).  A preliminary hearing was held, and it was determined there was probable cause to move forward with the charges (*id.* ¶ 22).  Additionally, the charges were presented to the Grand Jury, and the plaintiff was indicted on two counts of Second Degree Burglary (*id.* ¶ 23, ex. A).  Defendant Barfield has since left the Sheriff's Office.  According to the Sheriff's testimony in his affidavit dated May 9, 2008, it was his understanding that the charges were still pending at that time (Dennis aff. ¶ 19).

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

4

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

The defendants argue that the plaintiff's allegations of violation of his Fourth Amendment rights fail because probable cause existed to arrest the plaintiff.[1] This court agrees. "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is

---

[1] If the plaintiff is attempting to bring a malicious prosecution claim under Section 1983, such claim fails. In *Lambert v. Williams*, 223 F.3d 257 (4th Cir. 2000), the Fourth Circuit Court of Appeals stated, "What we termed a 'malicious prosecution' claim in [*Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir.1996)] is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution -specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. It is not an independent cause of action." *Id.* at 262.

unreasonable." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir.1996). Conversely, "there is no cause of action for 'false arrest' under Section 1983 unless the arresting officer lacked probable cause." *See Street v. Surdyka*, 492 F.2d 368, 372-73 (4th Cir.1974).

The reasonableness of a seizure under the Fourth Amendment should be analyzed from an objective perspective. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989) ("The Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts like 'malice' and 'sadism' have no proper place in that inquiry."). "Probable cause need only exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3rd Cir.1994).

> Probable cause to justify an arrest arises when "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Probable cause requires more than "bare suspicion" but requires less than evidence necessary to convict. "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." And when it is considered in the light of all of the surrounding circumstances, even "seemingly innocent activity" may provide a basis for finding probable cause.

*Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted). *See Pasiewicz v. Lake County Forest Preserve Dist.,* 270 F.3d 520, 524 (7th Cir. 2001) ("When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible."). In order to prove an absence of probable cause, the plaintiff "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" the plaintiff was involved in the charged offense. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002).

As argued by the defendants, under the above-recited standard, defendant Barfield had sufficient probable cause to arrest the plaintiff: (1) the plaintiff, as well as

6

several other witnesses, admitted that the plaintiff was involved in the crimes; (2) arrest warrants were issued by a neutral, detached magistrate and a preliminary hearing found that probable cause existed; and (3) the Sumter County Grand Jury returned a true bill on the plaintiff's charges. In *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979), the United States Supreme Court determined that the issuance of a facially valid warrant by a magistrate satisfies the probable cause standard. The plaintiff claims the warrants were not valid because the address was incorrectly listed as 45B instead of 42B. However, as argued by the defendants, this is simply a scrivener's error that does not impact the validity of the warrant. Defendant Barfield provided a consent to search that was signed by the plaintiff, with the proper address (Barfield aff., ex. A). The fact that the address was improperly written on the arrest warrant does not invalidate the warrant in any way. *See McLean v. Mallott*, No. 93-6714, 1993 WL 455239 (4th Cir. 1993)(unpublished opinion)(typographical error does not invalidate a warrant). The incorrect house number did not negate any elements of the charged offense and, therefore, did not affect the validity of the charge. *See U.S. v. Carter*, 756 F.2d 310, 313 (3rd Cir. 1985). In *Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir. 1991), the Fourth Circuit explained that a probable cause determination by a magistrate provides additional support that probable cause for an arrest was present. The court stated:

> We encourage law enforcement officers to seek warrants because magistrates from their detached perspective serve as the essential "checkpoint between the Government and the citizen." When a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983. Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates. This in turn would promote delay in the execution of warrants, and alter the proper allocation of law enforcement functions.

*Id.* at 262. Further,"[w]here the Grand Jury has returned a true bill upon the charge made, such finding amounts to a judicial recognition that probable cause does exist and infers prima

7

facie probable cause for the prosecution." *White v. Coleman*, 277 F. Supp. 292, 297 (D.S.C. 1967) (citation omitted).

In his motion for summary judgment, the plaintiff claims that the trespassing charge against him was dropped because the arresting officer did not appear at the hearing. As a result, he asks the court to rule in his favor. However, as noted above, defendant Barfield is no longer employed by the Sheriff's Office, and thus he is no longer able to prosecute cases. Further, as set forth above, probable cause existed to believe the plaintiff committed the offenses for which he was arrested, and the fact the trespassing charge may have been dismissed does not change this. Based upon the foregoing, the plaintiff's Fourth Amendment claim fails.

In his complaint, the plaintiff also makes vague allegations of a due process violation pursuant to the Fifth and Fourteenth Amendments. While the Fifth Amendment does prohibit the government from depriving any person of "life, liberty, or property, without due process of law," the plaintiff must be able to establish "a deprivation of a cognizable liberty interest before he can prevail on a Fifth Amendment claim." *Wright v. Anderson*, No. 5:04-cv-001086, 2008 WL 583442, *2 (slip copy) (S.D. W.Va. 2008) (citations omitted); *see also Robinson v. Gonzales*, 493 F.Supp.2d 758, 763 (D. Md. 2007). The plaintiff has made no showing of a clear deprivation of his due process rights and, thus, this claim is without merit.

To the extent the plaintiff alleges a claim pursuant to the South Carolina Tort Claims Act, any such claim also fails. The plaintiff has failed to come forward with any evidence supporting his claim of "breach of promise" by Sheriff Dennis. The evidence before this court shows that Sheriff Dennis did not promise the plaintiff that he would not be arrested if he cooperated in the investigation, as the decision had already been made to arrest the plaintiff for the prior crimes. Further, he cannot establish a malicious prosecution claim. "To maintain an action for malicious prosecution, plaintiff must show (1) the institution or

8

continuation of original judicial proceedings, either civil or criminal; (2) by, or at the instance of, the defendant; (3) termination of such proceeding in plaintiff's favor; (4) malice in instituting such proceedings; (5) want of probable cause, and (6) resulting injury or damage." *Parrot v. Plowden Motor Co.*, 143 S.E.2d 607, 609 (S.C. 1965). The plaintiff cannot establish such a claim because, as set forth above, probable cause did exist to arrest the plaintiff.

The defendants argue that they are entitled to qualified immunity as their conduct did not violate any clearly established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). In this case, the defendants arrested the plaintiff after obtaining information showing he was the primary suspect, following a path from a robbery to his

9

house, and obtaining a statement from the plaintiff admitting to the crimes. Moreover, an arrest warrant was issued, a judge found probable cause at the preliminary hearing, and the plaintiff was indicted on the charges. The plaintiff has failed to demonstrate that the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 35) be granted and the plaintiff's motion for summary judgment (doc. 50) be denied.

s/William M. Catoe
United States Magistrate Judge

December 12, 2008

Greenville, South Carolina